PAUL L. REIN, Esq. (SBN 43053)
AARON M. CLEFTON, Esq.  (SBN 318680)
REIN & CLEFTON, Attorneys at Law
200 Lakeside Drive, Suite A
Oakland, CA  94612
Telephone:  510/832-5001
Facsimile:   510/832-4787
info@reincleftonlaw.com

IRAKLI KARBELASHVILI, Esq. (SBN 302971)
ALLACCESS LAW GROUP
irakli@allaccesslawgroup.com
1400 Coleman Ave Ste F28
Santa Clara, CA 95050
Telephone: (408) 295-0137
Fax: (408) 295-0142

Attorneys for Plaintiff
AMANDA DONAGHEY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| AMANDA DONAGHEY,<br><br>       Plaintiff,<br><br>  v.<br><br>MOORPARK BELLINGHAM HOMEOWNERS ASSOCIATION, INC.; WESTCOM PROPERTY SERVICES, INC.;<br><br>       Defendants. | CASE NO. 22-cv-8524<br><u>Civil Rights</u><br><br>COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:<br><br>1) Violation of the Federal Fair Housing Act (42 USC § 3601 *et seq*.)<br><br>2)  Violation of the California Fair Employment and Housing Act (Gov't Code § 12926 *et seq.*)<br><br>3) Violation of the California Disabled Persons Act (Civil Code § 54 *et seq.*)<br><br>4) Violation of the California Unruh Act (Civil Code § 51(b))<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff AMANDA DONAGHEY complains of Defendants MOORPARK BELLINGHAM HOMEOWNERS ASSOCIATION, INC.; WESTCOM PROPERTY SERVICES, INC., and alleges as follows:

1

1. **INTRODUCTION:** Plaintiff AMANDA DONAGHEY brings this action against MOORPARK BELLINGHAM HOMEOWNERS ASSOCIATION, INC.; WESTCOM PROPERTY SERVICES, INC. (collectively, "Defendants") the owners and operators of condominium building located at 12152 Moorpark Street, Studio City, California (Moorpark Bellingham), alleging discrimination on the basis of disability in violation of the federal Fair Housing Act, 42 U.S.C. § 3601, et seq., and related state laws. Plaintiff AMANDA DONAGHEY is a "person with a disability" due to chronic cholinergic urticaria, an autoimmune condition which manifests as an allergic reaction, including flushing, hives, rashes, and ultimately anaphylaxis when Plaintiff is exposed to hot and poorly ventilated spaces that exceed 74 degrees in temperature.

2. Plaintiff is the co-owner of a condominium at the Moorpark Bellingham. She resides in the condominium with her partner and co-owner. Defendants maintain the common area spaces at the Moorpark Bellingham including but not limited to the hallways, lobby, parking areas and pool area of the building. Plaintiff and all of the other condominium owners in the building pay monthly homeowners association dues to pay for the maintenance, upkeep, and utilities of the common areas of the building. The lobby and hallways of the Moorpark Bellingham are equipped with air conditioning, but Defendants deliberately do not cool all common areas of the building. Specifically, Defendants choose not to use the air conditioning in the lobby, even though it is necessary to use it to exit the building and collect mail. Plaintiff risks personal injury and exacerbation of the symptoms of her disability because Defendants refuse to air condition this small, approximately 19' by 19' room, and other common areas.

3. On July 13, 2021, Plaintiff sent an email to Defendants explaining her disability and requesting the accommodation of Defendants setting the thermostat in the lobby of the building to between 72 and 74 degrees because at that time the outdoor temperature reached approximately 80 degrees for several hours that day. Inside the lobby, the Plaintiff believed the temperature even hotter. Plaintiff explained that keeping the air conditioner on in the common areas would allow her to safely pass through and use those areas of the building just as the other members of the HOA are allowed to do. Defendants denied Plaintiff's request for

accommodation. Defendants' refusal to accommodate Plaintiff has essentially trapped her in her condo during the summer months and on any other warm days in Southern California. Even on moderately warm days the temperature in the lobby can spike to more than 80 degrees. On hotter days it can swelter to over 90 degrees. At these temperatures, Plaintiff can have a significant reaction including flushing, hives, and rashes, in the few minutes that it takes her to walk from her car in the parking garage, through the lobby, waiting in the elevator to get to her floor, and walking down her hallway to get inside her apartment. When Plaintiff is stuck inside her apartment, she is isolated from her friends and family and is unable to work, both of which negatively impact her health. Despite Defendants' actual knowledge that Plaintiff is a person with a disability, Defendants have failed to cool the common areas of the Moorpark Bellingham in order to allow disabled Plaintiff to enjoy the common areas of her home on an equal basis to the nondisabled homeowners of the Moorpark Bellingham. By this action, Plaintiff seeks the Court's assistance in forcing Defendants to live up to their responsibilities under federal and state disability laws.

4.      Plaintiff seeks an injunction compelling Defendants to cool the common areas of the Moorpark Bellingham, including the lobby and hallways to between 72 and 74 degrees to provide equal access to those areas to disabled homeowners such as Plaintiff, to agree to provide reasonable accommodations to disabled homeowners in the future, and damages for the injuries Plaintiff has suffered and will continue to suffer until Defendants change their discriminatory behavior.

5.      **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 USC section 1331 for violations of the Fair Housing Act, 42 USC sections 3601 *et seq*. This Court has jurisdiction over the pendent state law claims brought under California law pursuant to 28 U.S.C. section 1367.

6.      **VENUE:** Venue is proper in this court pursuant to 28 USC section 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

7.      **INTRADISTRICT:** This case should be assigned to the Western Division as the

1  real property which is the subject of this action is located in this intradistrict and Plaintiff's causes
2  of action arose in this intradistrict.

3       8. **PARTIES:** Plaintiff is a qualified disabled person. She has been diagnosed with
4  chronic cholinergic urticaria, which is an autoimmune disease which manifests as an allergic
5  reaction to heat. If Plaintiff is exposed to high heat or otherwise raises her body temperature
6  through exercise or stressful/emotional situations, her skin flushes, and she feels a painful burning
7  sensation on her skin. Plaintiff can also develop hives and rashes, and in extreme circumstances,
8  she goes into anaphylaxis due to heat. Plaintiff lives with disabilities that substantially limit one
9  or more major life activities, including her ability to exercise, work, walk outside in even
10 moderate temperatures, and be in any interior space when the temperature is above 74 degrees.
11 Further, Plaintiff's disability also substantially limits the operation of her immune system.
12 Plaintiff is and at all times herein relevant was a "handicapped person" as defined by 42 U.S.C.
13 section 3602, and a "person with a disability" as defined in 29 U.S.C. section 705(9)(B),
14 California Government Code section 12926, the Unruh Civil Rights Act, California Civil Code
15 section 51, the Disabled Persons Act, California Civil Code section 54.1, and Civil Code section
16 3345. Plaintiff has been issued from the State of California to park any vehicle which she drives
17 or is transported in, in a designated accessible parking space, so that she does not have to walk
18 any significant distance outdoors in the heat.

19       9. Defendant MOORPARK BELLINGHAM HOMEOWNERS ASSOCIATION,
20 INC. ("Homeowners Association") is and was the Homeowners Association of the building
21 known as the Moorpark Bellingham located at 12152 Moorpark Street, Studio City, California.
22 Plaintiff is further informed, believes and thereon alleges that the Homeowners Associationis an
23 "owner" within the meaning of FEHA, Government Code § 12927(e), and a business
24 establishment under the Unruh Act, Civil Code § 51.

25       10. Defendant WESTCOM PROPERTY SERVICES, INC. ("Westcom") holds the
26 contract to manage the Moorpark Bellingham building and provides property management for the
27 HOA. Westcom is an owner and operator of the building within the meaning of fair housing
28 laws. Plaintiff is further informed, believes and thereon alleges that Westcom is an "owner"

1  within the meaning of FEHA, Government Code § 12927(e), and a business establishment under
2  the Unruh Act, Civil Code § 51.

3        11.    Plaintiff is informed, believes, and thereon alleges that each Defendant is and was,
4  at all times relevant, the agent, employee, or representative of each other Defendants.  Each
5  Defendant in doing the acts or in omitting to act as alleged in this Complaint, was acting within
6  the course and scop of his or her actual apparent authority pursuant to such agency, or the alleged
7  acts or omissions of each Defendant as agent were subsequently ratified and adopted by each
8  Defendant as principal.

9        12.    **FACTUAL STATEMENT:** Plaintiff and her co-owner, Justin Milaski, purchased
10  their condominium in the Moorpark Bellingham building in 2015. They have paid monthly HOA
11  membership dues as well as any required special assessments on HOA members since their
12  purchase.  At the time that Plaintiff moved into her condominium, she was not disabled.

13        13.    In late 2018, Plaintiff was vacationing in Carmel by the Sea. She became severely
14  ill.  She was vomiting, running a fever, and broke out into hives that covered her entire body.  She
15  went into anaphylaxis and taken to the emergency room.  Plaintiff was treated in the hospital with
16  medications to treat her symptoms, but medical professionals could not explain her allergic
17  reaction.  After her initial hospitalization, Plaintiff saw numerous specialists and underwent
18  extensive medical testing, but no one was able provide her with a diagnosis.

19        14.    In 2020, Plaintiff was ultimately diagnosed with chronic cholinergic urticaria by
20  her dermatologist and allergist.  Chronic cholinergic urticaria is an allergy to heat which can be
21  brought on by any rise in Plaintiff's body temperature, including due to exercise, extreme
22  emotions, and being exposed to external heat sources (such as hot weather outdoors or hot, poorly
23  ventilated areas indoors).  When Plaintiff's chronic cholinergic urticaria is triggered by a rise in
24  her body temperature, her skin becomes flushed, and she experiences a painful burning sensation
25  on her skin. She also experiences rashes, hives, panic and can go into anaphylaxis. In order to
26  avoid exacerbating her condition, Plaintiff's doctors have advised her to avoid any hot and poorly
27  ventilated spaces and to keep her surrounding area at a temperature at or below 74 degrees.

28        15.    Plaintiff had to be very cautious during the COVID-19 pandemic.  A primary

1 manifestation of a Covid-19 infection is a fever. A sustained rise in body temperature such as a fever can quickly cause Plaintiff to experience a severe allergic reaction and cause her to experience anaphylaxis. Thus, Plaintiff was mainly confined to her condominium during the first part of the pandemic. Once Covid vaccines were readily available in 2021, Plaintiff began to venture out of her home more.

16. During the summer heat of 2021, Plaintiff began experiencing symptoms of chronic cholinergic urticaria in the time that it took her to walk from her car, through the lobby of the Moorpark Bellingham, up one level in the elevator, and down the hallway to her home. Plaintiff noticed that the lobby of the Moorpark Bellingham was extremely hot, i.e., over 90 degrees, even when the temperatures outside were 20 degrees cooler, i.e., 60 or 70 degrees.

17. On July 13, 2021, Plaintiff sent an email to the property manager, Ana Elizondo, requesting Defendants to accommodate her disability by cooling the common areas of the Moorpark Bellingham to 72 to 74 degrees. Plaintiff wrote in part:

> Recently I was diagnosed with Cholinergic Urticaria, which means any raise in my body temperature leads to me having an allergic reaction which could possibly put me into anaphylaxis.
>
> As you know we live in Southern California and in the summer months the outside temperature can climb up over 100 degrees. This is very dangerous for me. Our lobby is floor to ceiling thin glass windows that are directly facing into the sun all day which causes the lobby to warm to over 90 degrees. When I pass through to get my mail or when I have a need to sit in the lobby, the warm temperature causes rashes to appear on my body and makes me feel physically unwell.
>
> I would appreciate it if for the sake of my health and safety that the Board would remedy this matter immediately. Currently I keep my home cooled to 72-74 degrees and that has been keeping my condition under control. I am requesting that our common areas are cooled to the same temperature.

18. On July 22, 2021, Ms. Elizondo informed Plaintiff that she forwarded her request for accommodation to the HOA board for consideration.

19. On or about July 29, 2021, Plaintiff observed that the thermostat in the lobby of Moorpark Bellingham had been replaced with a new thermostat and a lock had been placed on the case of the thermostat so that it could not be accessed without a combination. The air conditioner was set to off, and the temperature in the lobby was 85 degrees.

20. On August 1, 2021, Plaintiff emailed Ms. Elizondo informing her of the situation

1  and requesting that the lock be removed and the that the thermostat be set to cool the lobby to 74
2  degrees. Ms. Elizondo responded on August 2, 2021, that she was unaware of the lock on the
3  thermostat, but she agreed to add it to the agenda of upcoming HOA executive meeting.  Plaintiff
4  provided Ms. Elizondo with photographic evidence that the lock on the thermostat had been
5  installed between July 25, 2021, and July 29, 2021.  On information and belief, Defendants
6  placed the lock on the thermostat in the lobby of the Moorpark Bellingham in direct retaliation of
7  Plaintiff's request for accommodation to have the common areas of the building cooled to 74
8  degrees.
9        21.     On August 5, 2021, Ms. Elizondo responded to Plaintiff stating that she had
10 "confirmed that the thermostat was replaced and a lock installed."  Additionally, Ms. Elizondo
11 asked Plaintiff, "Do you have any paperwork from your doctor about your condition?"  Plaintiff
12 provided Defendants with a letter from her doctor supporting her request for accommodation on
13 September 3, 2021. Defendant did not respond.
14       22.     On August 17, 2021, Defendants sent out a survey to the Moorpark Bellingham
15 HOA members asking whether each member was "in favor of turning on the a/c unit in the lobby
16 areas  a few hours a day during the summer months."  Plaintiff was extremely insulted by this
17 survey. First, her request for Defendant to accommodate her disability should not be decided by
18 the residents in the building who had no knowledge of why the board was considering cooling the
19 lobby of the building.  Second, Plaintiff requested that the lobby be cooled to between 72 and 74
20 degrees at all times, not just a few hours a day in summer months because in the San Fernando
21 Valley of Los Angeles, there are 100 degree days well into the fall.
22       23.     In response to Defendants' survey, Plaintiff wrote and delivered an unsigned letter
23 to all the members of the HOA who are not on the board providing an explanation of her
24 requested accommodation and the reasons for her request.
25       24.     On September 11, 2021, HOA President Sergey Berkovich walked by Plaintiff's
26 door and gestured at Plaintiff's door the middle finger.
27       25.     On September 15, 2021, Plaintiff sent a follow-up email to Ms. Elizondo regarding
28 her request accommodation because he had not responded to her September 3, 2021

7

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

communication transmitting her doctor's note. Plaintiff explained that the temperature in the lobby is making her sick. She informed Defendants that the lobby temperature is so high that she cannot even remain there long enough to get her mail. Plaintiff also informed Defendants that she is essentially unable to leave the building because she was unable to go through the lobby due to the heat and she was unable to leave through the alternative exit because of a sewage overflow in the stairwell. In response, Ms. Elizondo stated that the board had scheduled an executive meeting to discuss her request for accommodations for Monday, September 20, 2021, over two months after Plaintiff's request for Defendants to accommodate her disability.

26. On September 22, 2021, Plaintiff sent another email requesting a report on the outcome of the HOA board meeting. Ms. Elizondo told Plaintiff that she would send a response soon.

27. On October 1, 2021, Plaintiff's then attorney, Peter Ryan, sent a second request for reasonable accommodation on behalf of Plaintiff to Defendants' attorney, Thomas Ware. This second request for reasonable accommodation of Plaintiff's disability stated in part:

> The HVAC has been shut down completely in the building lobby on several occasions this summer resulting room temperatures exceeding 90 degrees. As the HOA has previously been advised, Ms. Donaghey has a health condition which renders her vulnerable to excessive heat. She has physically suffered as a result of the HOA's current practice of turning the HVAC system off and demands the simple accommodation to maintain common areas at reasonable temperatures at all times.
>
> This letter constitutes Mr. Milaski and Ms. Donaghey's demand that the HOA board immediately cease and desist their defamatory statements aimed at Mr. Milaski and Ms. Donaghey. Mr. Milaski and Ms. Donaghey further demand that the HOA board work with management to ensure that the parking garage is properly lit at all times and that HVAC is turned on in all HOA common areas to prevent these areas from exceeding 75 degrees.

28. On October 11, 2021, Defendants finally responded to Plaintiff's request for accommodation to cool the common areas of the building. They stated in part in denying Plaintiff's reasonable accommodation request:

> Under the advice of the Associations attorney, we would like to open a dialogue with you about the a/c issue in the lobby. Currently, it is our understanding that you enter the building through the garage area or through a side door of the building and very rarely enter or spend time in the lobby area. We find that your request of the Association to run the a/c unit for the lobby area is not cost effective based on

>the amount of time you use the area. If our understanding of this is incorrect, please let us know. For this reason, the Board is currently not in favor of running a/c unit for the lobby.

29. Plaintiff found this response particularly insulting as the whole reason for requesting that Defendants cool the common areas of the building was so that she can spend time in the common areas of the building. This included safely retrieving her mail from the mailboxes in the lobby. Defendants' response creates a catch-22. They refuse to cool the lobby because they have not observed Plaintiff spending much time in the lobby, but Plaintiff cannot spend time in the lobby if Defendants refuse to cool it so she can spend time there safely. Further, cooling the lobby is a safety issue for Plaintiff, and Defendants' minimizing of her disabling condition is offensive.

30. On October 13, 2021, Plaintiff filed a complaint with the Department of Fair Employment and Housing (DFEH) in the hopes of resolving her issues with Defendants without the need for a lawsuit.

31. After filing the complaint with DFEH Defendants' representatives, including the board members of the HOA, began harassing and intimidating Plaintiff in retaliation for her DFEH complaint. For example, on October 23, 2021, Plaintiff heard two board members discussing how Defendants should handle her DFEH complaint very loudly directly outside the door to her home, including yelling that Plaintiff is not disabled. Not only was Plaintiff insulted, but she also felt very anxious upon hearing Defendants' representative's conversation, fearing that she would be confronted and blocked from leaving her apartment.

32. On October 30, 2021, Plaintiff's co-owner, Justin Milaski, noticed that some work was being done in the lobby of the Moorpark Bellingham. Mr. Milaski and Plaintiff emailed Ms. Elizondo to inquire about what work was being done. Ms. Elizondo responded that HOA board was installing window coverings in the lobby. Plaintiff immediately informed Ms. Elizondo that curtains would not help to accommodate her disability. Plaintiff also questioned why Defendants would choose to spend money redecorating the lobby when they claimed they could not afford to cool the lobby to accommodate her disability.

33. On November 11, 2021, Ms. Elizondo informed Plaintiff that she could no longer

discuss anything regarding Plaintiff's requests for accommodation because she filed a complaint with DFEH.

34. Plaintiff continued to pursue her claim with DFEH, including attempting to mediate with Defendants. However, Defendants failed to offer any accommodations that would allow Plaintiff to use the lobby and other common areas of her property safely. The only substantive offer that Defendants made to "accommodate" Plaintiff was to allow the ability to enter and exit the building through to an exterior side door so that she would not have to go through the lobby to enter her own building. However, this offer was insulting and did not address Plaintiff's request for accommodation. Plaintiff should not be forced to enter and exit her own home through a side door simply because she is disabled. She must be allowed to enter and exit her home through the same door as every other property owner at the Moorpark Bellingham. Additionally, the side door entry does not provide Plaintiff access to the lobby where her mailbox is or the elevator which she uses to avoid having to take the stairs, particularly if she is carrying groceries or something else to her apartment. Plaintiff's disability is triggered by any exercise, including climbing stairs. She needs access to the elevator, front entrance, and the lobby.

35. January 22, 2022, Board Member Valarie Nixon called Plaintiff an "asshole" while Plaintiff sat on her car. The incident was videotaped.

36. During the summer of 2022, Plaintiff was essentially trapped in her home due to the lack of cooling and ventilation in the lobby of the Moorpark Bellingham.

37. Between August and September 2022, Defendants installed roller shades in the lobby in a misguided attempt to cool the space. However, the shades in fact had the opposite effect, and when lowered they keep the lobby of the building as much as 20 degrees warmer than the outside temperature.

38. Plaintiff and Defendants were unable to successfully mediate this matter through DFEH. Plaintiff's case was officially closed on October 6, 2022. Plaintiff was forced to file this lawsuit to enforce her right to fair and equal access to her home, where Defendants have barred her from freely coming and going, living her life, and enjoying her home.

39. October 12, 2022, Defendants hired workers to repair the lobby drywall in the

ceiling, stairwell, and bathroom.  Defendants turned on the air conditioning on for these workers for at least two days, set at a comfortable 74 degrees. After the work as complete, Defendants turned off the air conditioning again.  This lawsuit followed.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE FEDERAL FAIR HOUSINT ACT**
**(42 U.S.C. § 3601 *et seq.*)**

40.  Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 39, above, and incorporates them herein by reference as if separately repled hereafter.

41.  The Building is a "dwelling" within the meaning of the Fair Housing Act (FHA). 42 U.S.C. § 3602.

42.  Based upon the foregoing, Defendants have violated the protections afforded to Plaintiff under the FHA, including but not limited to, the following:

    a.  Failing and refusing to make reasonable accommodations in policies, programs and procedures when such is necessary to afford Plaintiff an equal opportunity to use and enjoy the dwelling;

    b.  Failing and refusing to make the common use areas at the building readily accessible and useable by handicapped persons;

    c.  Harassment of retaliation against Plaintiff for her reasonable accommodation request; and

    d.  Provision of segregated or separate housing accommodations in constructively denying Plaintiff use the lobby and elevator of the building and forcing her to use a side entrance to the building rather than the front door to access her dwelling.

43.  Defendants have actual knowledge that Plaintiff is a person with a disability who requires accommodations to allow Plaintiff to safely use the common areas of the Moorpark Bellingham.

44.  When Plaintiff requested reasonable accommodations of her disability, and Defendants have variously delayed responding and refused to provide the necessary

accommodations to Plaintiff which effectively denied Plaintiff the use of the common areas of the Moorpark Bellingham.

45. Defendant maintains a pattern and practice of denying Plaintiff full and equal access to her dwelling by failure to maintain the common areas of the building in a manner that is accessible for Plaintiff by cooling the common areas of the building to a maximum of 74 degrees. 42 U.S.C.A. § 3604(f)(2).

46. Based upon the foregoing, Plaintiff is entitled to actual damages, punitive and exemplary damages and injunctive relief as set forth below.

WHEREFORE, Plaintiff prays for damages and injunctive relief as hereinafter stated.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**
*(Cal. Government Code § 12955 et. seq.)*

47. Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 46 of this Complaint and incorporates them herein as if separately re-pleaded.

48. The Fair Employment and Housing Act (FEHA) prohibits discrimination on the basis of disability in housing. Gov. C. § 12955 *et seq*.

49. The Building is a "housing accommodation" within the meaning of FEHA. Cal. Gov't Code § 12927.

50. Based upon the foregoing, Defendants have violated the protections of FEHA as follows:

    a. Failure to modify policies and practices to provide reasonable accommodations to Plaintiffs, including changes in policies, programs and procedures that allow persons with disabilities to enjoy their dwelling to the same extent as those without disabilities, and various unreasonable delays in responding to the accommodation request.

51. Based upon the foregoing, Plaintiff is entitled to actual damages, punitive and exemplary damages and injunctive relief as set forth below.

WHEREFORE, Plaintiff prays for damages and injunctive relief as hereinafter stated.

### THIRD CAUSE OF ACTION:
### VIOLATION OF THE CALIFORNIA DISABLED PERSONS ACT
(Cal. Civ. Code § 54 *et seq*)

52. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 51 of this Complaint and incorporates them herein as if separately re-pleaded.

53. The Disabled Persons Act (DPA) requires, "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to all housing accommodations offered for rent, lease, or compensation in this state, subject to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons."  Civ. C. § 54.1(b)(1).

54. The subject apartment building is a housing accommodation within the meaning of California Civil Code section 54.1(b)(2).  Plaintiff is a person with a disability within the meaning of the DPA.

55. Based upon the foregoing, Defendant has violated the DPA as follows:

   a. Denying Plaintiff full and equal access to her housing accommodations, (Civ. C. § 54.1(b)(1));

   b. Refusing to "make reasonable accommodations in rules, policies, practices, or services, when those accommodations may be necessary to afford individuals with a disability equal opportunity to use and enjoy the premises."  (Civ. C. § 54.1(b)(3)(B));

56. Plaintiff has suffered actual damage as a result of such failures which she alleges is the result of Defendants' knowing and intentional violation of her rights as a disabled person under California Law.

57. Based upon the foregoing, Plaintiff is entitled to statutory damages, actual damages, punitive and exemplary damages as set forth below.

WHEREFORE, Plaintiff requests relief as outlined below.

**FOURTH CAUSE OF ACTION:**
**VIOLATION OF UNRUH CIVIL RIGHT ACT**
**(Cal. Civ. Code § 51 *et. seq.*)**

58. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 57 of this Complaint and incorporates them herein as if separately re-pleaded.

59. At all times herein mentioned, the Unruh Civil Rights Act, California Civil Code 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

60. The building is a business establishment and Plaintiff is a person with a disability within the meaning of the Unruh Act.

61. Defendant violated the Unruh Act by its acts and omissions, including but not limited to, the following:

    a. Failing and refusing to make reasonable accommodations in policies, programs and procedures when such is necessary to afford Plaintiff an equal opportunity to use and enjoy the dwelling;

    b. Failing and refusing to make the common use areas at the building readily accessible and useable by handicapped persons;

    c. Harassment of retaliation against Plaintiff for her reasonable accommodation request; and

    d. Provision of segregated or separate housing accommodations in constructively denying Plaintiff use the lobby and elevator of the building and forcing her to use a side entrance to the building rather than the front door to access her dwelling.

62. Plaintiff does not claim a violation of the Americans with Disabilities Act (ADA)

as incorporated into Unruh, Civil Code section 51(f). She claims a violation of Civil Code section 51(b), independently of the ADA under State law.

63. Plaintiff is informed, believes, and thereon allege that Defendants' behavior, as alleged herein, was intentional: Defendants were aware and/or were made aware of their duties to refrain from establishing discriminatory policies and/or barriers preventing physically disabled persons from accessing its facilities, prior to the filing of this Complaint.

64. Defendants' stubborn refusal to provide disabled homeowners with accessible public areas and common spaces in violation of the laws set forth above, demonstrates a knowing and willful disregard for the law in general and an intentional denial of rights of disabled homeowners in particular. Such conduct justifies an award of treble, punitive and exemplary damages in addition to all other relief sought.

WHEREFORE, Plaintiff requests relief as outlined below.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief she requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff AMANDA DONAGHEY prays for judgment and the following specific relief against Defendants:

1. An order enjoining Defendants, their agents, officials, employees, and all persons acting in concert with them:

    a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

      b.      To provide a policy and procedure consistent with California and federal law to provide reasonable accommodations for persons with disabilities who live at the building or who wish to do so;

      c.      Grant Plaintiff's reasonable accommodation request;

      d.      To train Defendants' employees and agents in how to accommodate the rights and needs of disabled persons; and

      e.      To implement nondiscriminatory protocols, policies, and practices for accommodating persons with disabilities.

2. Retain jurisdiction over the Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of inaccessible facilities and policies as complained of herein no longer occur, and cannot recur;

3. Award to Plaintiff all appropriate damages, including but not limited to statutory damages, general damages, punitive and treble damages in amounts within the jurisdiction of the Court, all according to proof;

4. Award to Plaintiff all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law;

5. Award prejudgment interest pursuant to Civil Code section 3291; and

6. Grant such other and further relief as this Court may deem just and proper.

Date: November 21, 2022

REIN & CLEFTON
ALLACCESS LAW GROUP

      /s/
By IRAKLI KARBELASHVILI, Esq.
Attorney for Plaintiff
AMANDA DONAGHEY

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: November 21, 2022

REIN & CLEFTON
ALLACCESS LAW GROUP

_/s/_
By IRAKLI KARBELASHVILI, Esq.
Attorney for Plaintiff
AMANDA DONAGHEY